UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

RANDY CONSTANCE,                                              CASE NO.:

    Plaintiff,

v.

HOLLYBROOK GOLF AND TENNIS
CLUB CONDOMINIUM, INC., a Florida corporation,

    Defendant
_____/

## COMPLAINT

Plaintiff, RANDY CONSTANCE, sues Defendant, HOLLYBROOK GOLF AND TENNIS CLUB CONDOMINIUM, INC. (the "Club"), and alleges:

1. This is a case of a premier retirement community holding itself out to its residents and their guests as safety conscious, while simultaneously unlawfully denying its employee, who contracted COVID-19, legal protection through paid sick leave and instructing that employee to not inform the Club's residents of their potential exposure.

### Jurisdiction and Venue

2. Plaintiff is an individual who is over the age of eighteen and resides in Broward County, Florida.

3. The Club is a 55-plus condominium community located in Pembroke Pines, Florida.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the Families First Coronavirus Response Act ("FFCRA") and Emergency Paid Sick Leave Act ("EPSLA"),

1

which are enforced through sections 15(a)(3), 16 and 17 of the FLSA, 29 U.S.C. §§ 216-217. *See* 29 C.F.R. § 826.150.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful practices complained of herein, occurred in this District.

## Background

6. Congress enacted the FFCRA, in part, to safeguard employees impacted by the COVID-19 pandemic.

7. The Club is subject to the FFCRA.

8. Among the FFCRA's protections is the EPSLA.

9. The EPSLA mandates covered employers to provide up to two (2) weeks of paid sick leave and job protection for employees who, among other things, are (a) subject to a governmental quarantine or isolation order related to COVID-19 or (b) advised by a health care provider to quarantine or self-isolate due to concerns related to COVID-19.

10. Plaintiff dedicated over twenty-one (21) years of service to the Club as a maintenance supervisor.

11. On March 27, 2020, Plaintiff reported to his immediate supervisor, Joe Pellegrini, that he had been experiencing symptoms of COVID-19, including shortness of breath and chest tightness.

12. Because of his symptoms, Plaintiff notified Mr. Pellegrini that he was going to take time off from work and get tested for COVID-19.

13. Plaintiff also recommended to Mr. Pellegrini that the Club inform the employees that he supervised to get tested.  This was because Plaintiff was concerned for the Club's residents

and members.  As a 55 and older community, the age of the residents and members makes some of them particularly vulnerable to COVID-19.

14. Despite this vulnerability and his symptoms, Plaintiff was directed by the Club's general manager, Paul Ray, not to share this information with the Club's residents. A copy of the text message received from Ray is attached as Exhibit "A."

15. On April 5, 2020, Plaintiff's test results came back.

16. In the middle of a global health crisis, the results were exactly what Plaintiff feared. He was positive for COVID-19.

17. That same day, Plaintiff informed the Club of his positive COVID-19 test result.

18. When he informed the Club of his test results, Plaintiff again voiced his concerns for his coworkers and recommended the employees he supervised and interacted with daily be tested.

19. Again, Plaintiff was instructed by the Club to not tell these employees—or the residents—about his diagnosis to avoid "chaos."

20. Plaintiff's diagnosis resulted in his doctor's instructions to self-isolate.

21. This self-isolation was also required by governmental order.

22. Following his doctor's instructions and the requirements of the law, Plaintiff remained self-isolated in quarantine until the latter part of April 2020.

23. Plaintiff was one of the lucky ones.  He made a full recovery.

24. On April 20, 2020, Plaintiff informed the Club that his treating doctor provided him with a letter of release allowing him to return to work.

25. The Club instructed Plaintiff to report to the Club's office on April 22, 2020.

26. When Plaintiff returned to work on April 22, 2020, he was immediately terminated by the Club's Facilities Director, Mitch Davis.

27. Following Plaintiff's termination, one of his co-workers passed away due to COVID-19.

## COUNT I – VIOLATION OF THE FFCRA/EPSLA

28. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 27 above as if fully set forth herein.

29. The EPSLA requires employers to provide up to two weeks of paid sick leave and job protection for employees who, among other things, are (a) subject to a governmental quarantine or isolation order related to COVID-19 or (b) advised by a health care provider to quarantine or self-isolate due to concerns related to COVID-19.

30. These paid leave provisions apply to leave taken between April 1, 2020, and December 31, 2020.

31. Paid sick time under the EPSLA must be granted in addition to any pre-existing paid leave benefits provided.

32. The EPSLA also prohibits employers from requiring employees to use or exhaust their paid time off before availing themselves of paid leave under the Act.

33. Plaintiff was entitled to up to two weeks (or 80 hours) of paid sick leave pursuant to the EPSLA because he was advised by a health care provider to self-isolate (and was required to do so by governmental order) due to his COVID-19 diagnosis.

34. Yet, the Club blatantly disregarded its obligations under the EPSLA and forced him to use his paid time off for his entire absence.

35. This is a direct violation of EPSLA's requirements.

4

36. The Club's violation of the EPSLA's requirements was willful.

37. As a direct and proximate result of the Club's violation of the EPSLA, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any practice which violates the FFCRA or EPSLA;

b. Order Defendant to make Plaintiff whole, by compensating Plaintiff for unpaid sick leave wages, lost wages and benefits, including front pay, back pay with prejudgment interest, liquidated damages, and other remuneration for physical and mental pain, anguish, pain and humiliation from being terminated due to the loss of his long-term employment as a result of Plaintiff's diagnosis and taking of sick leave;

c. Award attorney's fees and costs pursuant to FFCRA and EPSLA;

d. Award punitive damages; and

e. Award any other relief this Honorable Court deems just and proper.

## COUNT II – RETALIATION UNDER THE FFCRA

38. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 27 above as if fully set forth herein.

39. The EPSLA prohibits employers from discharging or otherwise discriminating against any employee because the employee took qualifying paid sick leave.

40. Despite the EPSLA's requirements, the Club unlawfully terminated Plaintiff after he took leave as a result of his COVID-19 diagnosis.

41. Falling victim to COVID-19 was not enough.

42. The Club re-victimized Plaintiff, who dedicated over 21 years of his life to the Club, by terminating him in direct violation of the EPSLA's mandates.

43. This unlawful termination also resulted in Plaintiff's pension being subject to a 10% reduction as a penalty for "early retirement."

44. As a direct and proximate result of the Club's retaliation, Plaintiff suffered damages.

**WHEREFORE,** Plaintiff respectfully requests that the Court:

a. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any practice which violates the FFCRA or EPSLA;

b. Order Defendant to make Plaintiff whole, by compensating Plaintiff for lost wages and benefits, including front pay, back pay with prejudgment interest, liquidated damages, and other remuneration for physical and mental pain, anguish, pain and humiliation from being terminated due to the loss of his long-term employment as a result of Plaintiff's diagnosis and taking of sick leave;

c. Award attorney's fees and costs pursuant to FFCRA and EPSLA;

d. Award punitive damages; and

e. Award any other relief this Honorable Court deems just and proper.

## JURY TRIAL

Plaintiff hereby requests a trial by jury with respect to all claims so triable.

Dated: July 1, 2020

                                                 By: /s/ *Valerie Barnhart*
J. Freddy Perera, Esq.
Florida Bar No. 93625
freddy@pba-law.com
Valerie Barnhart, Esq.
Florida Bar No. 88549
valerie@pba-law.com
**PERERA BARNHART ALEMAN**
12401 Orange Drive, Suite 123
Davie, Florida 33330
Telephone: 786-485-5232

# EXHIBIT "A"

   

**Paul Ray**
+1 954-394-1222

Hi Randy. Hope you are well and that we'll see you back soon but only when you are fully healthy. Please be sure not to discuss your medical situation with any Hollybrook resident it's not appropriate and we are seeing more and more residents thinking they can ask inappropriate questions about employee health specifics. Thanks for understanding.

 Type message 

